NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLOBAL OUTREACH, LLC, et al., | **Hon. Dennis M. Cavanaugh** |
| Appellant, | **OPINION** |
| v. | Civil Action No. 2:12-04159 (DMC) |
| YA GLOBAL INVESTMENTS, L.P., | |
| Appellees. | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon the Appeal of Defendants-Appellants, Global Outreach, LLC, Global Financial Group, LLC, The Kothari 2000 Family Trust, Anil Kothari, and Hermangini Kothari (collectively "Defendants") of the Bankruptcy Court's Order entered on May 7, 2012, granting the motion of Plaintiff-Respondent, YA Global Investments L.P. ("YA"), for Partial Summary Judgment on Counts Two, Five, Six, Seven and Twelve of its Verified Complaint. (ECF No. 1). Further, YA has filed two Motions to Strike certain documents contained in Defendants' Designation of Items to be Included in the Record on Appeal and attached to Defendants' motion papers. (ECF Nos. 7, 20). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After careful consideration, and based upon the following, the Order entered by the Bankruptcy Court is **affirmed**, and YA's Motions to Strike are **granted**.

1

I.  **BACKGROUND**[1]

This matter arises from a lending transaction between YA and Global Outreach, S.A. ("Debtor"). As a condition of the transaction, YA required the Defendants to execute individual guaranty agreements ("Guaranty Agreements") for all amounts due under the various loan documents. YA provided financing to the Defendants for the development of a 500 acre luxury resort consisting of a hotel, golf course, and condominiums in Guanacaste, Costa Rica. On July 19, 2007, YA refinanced multiple bridge loans it made to the Defendants by extending a $41 million loan, evidenced by promissory note ("Note") and a note purchase agreement ("NPA"), executed by the Debtor and Anil C. Kothari, and individual guaranty agreements executed by each of the Defendants (the "Guaranty Agreements"). Based on the Debtor's and the Defendants' breach of the Note and the NPA by failing to sell thirty-two condominiums by August 1, 2009, YA originally filed an action with the New Jersey State Court seeking damages for Defendants' breaches (the "State Court Action"). On November 17, 2008, the State Court granted YA's Motion for Summary Judgment relating to such breaches, entering an Order granting partial Summary Judgment on Count Two of its Verified Complaint.

As a result of the Debtor's subsequent bankruptcy filing, the State Court Action was removed to Federal Bankruptcy Court. After the ruling in the State Court Action, the Debtor and Defendants committed several additional defaults under the Note and the NPA, including: (1) failing to make any payments due to YA under the Note, which fully matured on January 1, 2010; (2) failing to make the $22.05 million Phase I Equity Participation Payment by February 1,

---

[1] The facts set forth in this section are taken from Appellant's Statement of Facts and from Appellees' Counter-Statement of Facts.

2009, as required by Section 7.2(a) of the NPA; and (3) failing to make the Phase II Equity Participation Payment of $15.89 million by April 1, 2011 as required by Section 7.2(b) of the NPA. Moreover, because the Defendants failed to make any of the payments owed under the Note to YA, each of the Defendants committed a material breach of the Guaranty Agreements, through which each individual Defendant unconditionally guaranteed payment under the Note to YA. Such failures entitled YA to collect all amounts owed under the Note from each of the Defendants.

On August 29, 2011, YA filed a motion requesting that the Bankruptcy Court enter Partial Summary Judgment against the Defendants for these various breaches of the Note and the Guaranty Agreements. On May 4, 2012, Judge Steckroth granted YA's motion and awarded YA $81,931,666.67 for the principal of the loan plus interest accrued through October 17, 2011, as well as attorneys' fees and costs.

On July 6, 2012, the Defendants filed a Notice of Appeal from that determination (ECF No. 1). On appeal, Defendants ask this Court to reverse the Bankruptcy Court's Entry of Summary Judgment. Defendants argue that the Bankruptcy Court committed reversible error in finding: (a) YA did not breach the duty of good faith and fair dealing by not subordinating its loan to anticipated construction financing that never materialized; and (b) that a purported email sent weeks before the loan documents were executed that allegedly contradicts the clear and unambiguous terms of the Guaranty Agreements was inadmissible under the parol evidence rule. Defendants submitted a Brief in Support of the Appeal ("Def. Mov. Br.") on July 26, 2012. (ECF No. 4). YA filed an Opposition Brief ("YA Opp. Br") on August 9, 2012 (ECF No. 5). Defendants filed a Reply ("Def. Rep.") on August 23, 2012. (ECF No. 12).

3

On June 4, 2012, the Defendants filed a Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented (the "Designation"). (ECF No 2). On June 15, 2012, YA filed its Counter-Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented (the "Counter-Designation"). (ECF No. 3). In the Counter-Designation, YA objected to item 27 of the Designation, which it contends is a collection of articles concerning the activities of YA Global Investment, L.P., that were not part of the record before the Bankruptcy Court. The Defendants also cited to the documents in support of their arguments on appeal. On August 9, 2012, YA filed a Motion to Strike those contested items from Defendants' Designation of Items to be Included in the Record on Appeal, to ensure that the Court does not consider them in rendering a decision in this appeal. (ECF No. 7). Defendants filed Opposition on August 21, 2012. (ECF No. 10). YA filed a Reply on August 28, 2012. (ECF No. 15).

Further, YA has filed a second Motion to Strike, to exclude four documents attached to the Defendants August 23, 2012 Reply Appeal Brief. (ECF No. 13). (ECF No. 20). Defendants filed an Opposition Brief on September 14, 2012. (ECF No. 23). YA filed its Reply on September 24, 2012. (ECF No. 25).

Defendants' Appeal and YA's two Motions to Strike are now before this Court.

## II. **STANDARD OF REVIEW**

This Court has jurisdiction over final judgments and orders of the Bankruptcy Court pursuant to 28 U.S.C. §158. A district court applies a "clearly erroneous" standard to the bankruptcy judge's findings of fact and reviews the bankruptcy judge's legal conclusions *de*

4

*novo*. See FED. R. BANKR. P. 8013; In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995). A factual finding is clearly erroneous if, in reviewing all the evidence, the reviewing court is left with the "definite and firm conviction that a mistake has been committed," even if there is evidence to support the finding. In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d. Cir. 1992); (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). A district court reviews the bankruptcy court's "exercise of discretion for abuse thereof." Manus Corp. v. NRG Energy, Inc., (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116, 122 (3d. Cir. 1999). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." Id.

### III. DISCUSSION

#### A. YA's First Motion to Strike

YA seeks to strike from the record on appeal, a collection of articles designated by Defendants. (Designation, Item #27). YA argues that the articles were never presented to the Bankruptcy Court and were not part of the record below in determining YA's Motion for Partial Summary Judgment. (ECF No. 7, 5). The documents include a number of articles from internet websites and a copy of a petition filed in the Cayman Islands against an affiliate of YA which was voluntarily dismissed with prejudice. Defendants argue that the Court should take judicial notice of these documents, as they are relevant to YA's questionable lending practices and other misconduct.(ECF No. 10, 2).

FED. R. BANKR. P. 8006 provides that the appellant must designate the items to be included in the record on appeal from the Bankruptcy Court to the District Court. It is well established that on an appeal from the Bankruptcy Court, a District Court "is limited to review of

the evidence before the Bankruptcy Court and which was made a part of the record at the time the...decision was rendered." Matter of Halvajian, 216 B.R. 502, 509 (D.N.J. 1998). Consequently, the District Court must disregard any pleadings or documents that were not part of the record before the Bankruptcy Court. Id.; In re Applied Paging Technologies, Inc., 250 B.R. 496, 499 (D.N.J. 2000) (confirming that on appeal from the Bankruptcy Court the "District Court is limited to the factual record before the Bankruptcy Court.")

Here, Defendants argue that even though the documents were not presented before or considered by the Bankruptcy Court, this Court is permitted to take judicial notice of the documents under FED. R. EV. 201(b). (ECF No. 10, 2). However, the cases cited by Defendants do not support their argument that the Court should take judicial notice of these documents. The cases cited by Defendants show instances where other courts have appropriately taken judicial notice of documents containing facts obtained only from credible and legitimate sources such as SEC filing, data compiled by the Dow Jones, and other authenticated public records. See In re NAHC, Inc. Sec. Lit., 306 F.3d 1314, 1331 (3d Cir. 2002); Oran v. Stafford, 226 F.3d 275, 289 (taking judicial notice on appeal of properly authenticated SEC filing containing the company's employee compensation amounts); Giannini v. Rosenberg, 2012 WL 2076834, at *4 fn. 4 (D.N.J. June 8, 2012) (taking judicial notice of a New Jersey ethics committee panel's report and recommendation). None of those cases support Defendants' argument that information contained in unauthenticated internet websites can be the subject of judicial notice. In fact, the United States Court of Appeals for the Third Circuit has noted the unreliability of internet postings and websites similar to the ones presented here. Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007) (finding "particular concern" with a District Court's use of a website "to establish certain

6

facts about [plaintiff's] business" and explaining that before a court may take judicial notice of such information, the information must not be subject to reasonable dispute and must "be authenticated before it can be admitted.")

With regard to the Defendants' request that the Court take judicial notice of assertions by non-parties contained in a petition filed with a Cayman Islands Court for the purpose of raising an issue as to YA's good faith, this Court does not see any reason to include this document in its consideration of this appeal. As YA points out, the Cayman Islands petition was immediately dismissed by the petitioner and removed from the Cayman Islands Court's registry shortly after its filing and the petitioners agreed to pay YA's costs associated therewith. Further, the Cayman Islands Court ordered the petition and all annexes removed from the Court's registry and the public domain because of the petitioners bad faith and ulterior motives in filing the petition in the first insatnce. (ECF No. 15, Pg.4-5, fn. 2).

Coupled with the fact that YA has not been afforded any opportunity to test the authenticity, credibility or accuracy of these documents, this Court finds the proffered documents to be unreliable. Thus, the Court grants the motion to strike the documents in item #27 from the record on appeal.

### B. YA's Second Motion to Strike

YA also seeks to strike four documents attached to the Defendants' Reply Appeal Brief from the record. Those documents consist of approximately seventy-five pages of draft loan documents and alleged financing commitments, which YA argues should be stricken because the documents were not part of the record before the Bankruptcy Court and are wholly unreliable. (ECF No. 20, Pg. 4-5). These documents are only being presented for the first time on appeal,

and were never presented to YA or to the Bankruptcy Court in opposing YA's motion for summary judgment.

Defendants argue, as they did in their Opposition Brief to YA's previous Motion to Strike, that the Court should take judicial notice of these documents. Defendants assert that the Court should take judicial notice of these construction loan-related documents, not for the truth of their contents, but as evidence of the existence of: (1) the fact that a consortium of four Costa Rican banks had proceeded to the point of preparing documentation for the said construction loan; and (2) a material fact issue as to whether the construction loan would have resulted in a final commitment "but for" YA's refusal to subordinate its mezzanine loan. (ECF No. 23, Pg. 2).

The Third Circuit cases cited by Defendants, where judicial notice of certain documents was taken, are again inapposite to the facts here. In <u>In re Indian Palms Assocs., Ltd.</u>, 61 F.23d 197, 205 (3d Cir. 1995), judicial notice was taken as to portions of the record of an underlying bankruptcy case. Further, in <u>United States v. Remoi</u>, 404 F.3d 789, 792-793 (3d Cir. 2005), judicial notice was taken as to a charging instrument on which the defendants were convicted in the state court. The documents in those cases are far more reliable than the documents presented here. The documents that Defendants seek to introduce in the instant matter have not been considered by any lower court in this case, despite Defendants ability to present said documents at the time that the Bankruptcy Court decided the partial summary judgment motion, a fact conceded by Defendants. (<u>See</u> ECF No. 12, Pg. 10–11). Two of the documents submitted consist only of an "official" translation of the underlying document from Spanish to English without the actual "original" document. (<u>See</u> ECF No. 12, Appendix A and Appendix D). The other two documents contain unverified translations from Spanish to English that bear no indicia of

8

reliability whatsoever. (See ECF No. 12, Appendix B and Appendix C). Again, because the authenticity, veracity, and contents of the documents were never tested through any discovery, there is no basis for this Court to take judicial notice of those materials here. Thus, the Court rejects Defendants' request that judicial notice be taken of the documents attached to their Appeal Reply Brief.

### C. Judge Steckroth's Decision

The Court now turns to the substance of Judge Steckroth's decision. Judge Steckroth entered Partial Summary Judgment against the Defendants for failing to fulfill their obligations under the Note and Guaranty Agreements as gaurantors of the Debtor's loan from YA. Count Two of YA's Verified Complaint sought a judicial declaration that the Debtor defaulted under the Note and that all amounts owed to YA under the Note and the NPA are due and payable. (R000179-80[2]). Counts Five and Six sought damages for breaches of the Note and the NPA, and Count Seven alleged that the Defendants breached the Guaranty Agreements by failing to make all payments due under the Note. (R000182-85). Finally, Count Twelve sough attorneys' fees and costs as provided by the Note and the Guaranty Agreements. (R000187088). After reviewing the record, the Court finds that the Debtor committed numerous defaults under the Note and that two of those defaults were also material breaches of the NPA. Further, Defendants breached the Guaranty Agreements by failing to make any payments due under the Note. The Defendants' allegations challenging YA's entitlement to Partial Summary Judgment were unsupported by any evidence in the record, and so, were insufficient to survive a Summary Judgment motion.

---

[2] The citations to the record used in this Opinion come from the Appellee's Counter-Designation of Record on Appeal. (Jul. 6, 2012, ECF No. 3).

### i. The Bankruptcy Court did not err in rejecting Defendants' Contention that YA breached the Covenant of Good Faith and Fair Dealing.

Defendants' argue that YA violated the implied duty of good faith and fair dealing, thereby precluding YA from obtaining summary judgment on the Guaranty Agreements.

The loan documents involved in the dispute at issue here required YA to subordinate its loan under certain circumstances. As the evidence demonstrated, the Debtor never secured the anticipated construction financing that would have triggered YA's duty to subordinate its loan. The only facts in the record pertaining to the Debtor's attempts to secure this financing consisted of Kothari's affidavit that "the Construction Lenders issued a draft loan document to the Debtor." (R000332). Defendants write further, "when the Debtor was on the verge of obtaining the $85 million construction loan from a consortium of Costa Rican banks, YA Global torpedoed the entire Project by ignoring Debtor's demands that it subordinate the Note." (Def. Mov. Br. 21) (citing Kothari Aff., ¶¶ 47-49). However, Defendants have presented no other outside documentary evidence in support of Kothari's statement. The Bankruptcy Court properly held that "[t]he existence of construction financing has not been demonstrated," because the Defendants did not, and do not here, present any credible record evidence of loan from an outside party that would require YA to subordinate its Note.

The trial court already dismissed Defendants contention that YA breached the covenant of good faith and fair dealing. In their Answer, Counterclaim, and Third Party Complaint, the Defendants alleged affirmative claims for, *inter alia*: (a) breach of contract; (b) breach of the covenant of good faith; (c) fraud; (d) tortuous interference; (e) defamation; and (f) civil RICO charges. The Defendants acknowledge that the Bankruptcy Court previously dismissed those

10

counterclaims with prejudice, with their consent, in January 2010 for lack of standing. (Def. Mov. Br. 25). As a result, the Debtor's and the Defendants breach of the covenant of good faith claims have been dismissed with prejudice. Thus, the Bankruptcy Court correctly held that the Defendants are barred from asserting those claims as affirmative defenses against YA in an effort to frustrate YA's enforcement of the Guaranty Agreements. See, Lubrizol v. Exxon Corp., 929 F.2d 960, 961-964 (3d Cir. 1991) (holding that a second suit between parties involving a claim for reformation of a contract was barred by claim preclusion even those issued were only raised as a defense in the first action).

Defendants now make the same argument that they previously made before the Bankruptcy Court, that "an affirmative defense based on an alleged breach of the covenant of good faith and fair dealing somehow survived the previous dismissal of their affirmative counterclaims as an affirmative defense." (R000657). The Defendants' counterclaim, however, was dismissed two and a half years ago, and thus, "no longer exist[s]." (R000655). As stated by Judge Steckroth in rejecting the Defendants' same argument before the Bankruptcy Court, "[t]o now countenance the Defendants' argument would ignore the Court's earlier decisions and result in re-litigation of issues previously ruled on." (R000655).

The Defendants cite no authority supporting their proposition that an affirmative defense incorporating counterclaims by reference survives despite the dismissal of the underlying counterclaims. By contrast, courts in this district have dismissed affirmative defenses based on counterclaims that failed as a matter of law, and vice versa. See In re Gabapentin Patent Lit., 649 F.Supp. 2d 340, 348 (D.N.J. 2009) (Judge Hochberg determined that because "Purepac's affirmative defense of unclean hands has been stricken, Purepac's claim for declaratory relief on

11

the basis of unclean hands necessarily fails as well"); Waddington North America, Inc. v. Sabert Corp., 2010 WL 3907036, at *8 (D.N.J. Sept. 29, 2010) (Chief Judge Brown granted a motion to strike defenses that were based on the same inequitable conduct alleged in a counterclaim that failed to meet the applicable pleading standard). There is no valid legal justification for the Defendants' argument.

Thus, the Bankruptcy Court's holding as to the Defendants' "good faith and fair dealing" defense is affirmed.

### ii. The Bankruptcy Court correctly determined that the parol evidence rule barred the Defendants from altering, modifying, or supplementing the clear language of the NPA and the Guaranty Agreements.

The language of both the NPA and the Guaranty Agreements clearly demonstrates that each of the Defendants unconditionally guaranteed all payments due to YA under the Note. Defendants argued below that certain alleged pre-contractual discussion altered and/or modified their liability for those payments and YA's abilities to enforce the Guaranty Agreements. Both the parol evidence rule and the specific integration agreements contained in the NPA and the Guaranty Agreements barred the Defendants from altering and/or modifying the clear terms of those agreements, and the Bankruptcy Court properly rejected Defendants' arguments.

It is well settled that "the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." Conway v. 287 Corporate Ctr. Associates, 187 N.J. 259, 268 (2006). Parol evidence may be admitted only "if the language of the writing is unclear." Id. By contrast, "where a written agreement is complete on its face, oral testimony will not be permitted either to vary, alter, or contradict it, or to supply terms with respect to which the writing is silent." Id.

Section 1.1 of each of the Guaranty Agreements provided that "[the Defendants, as guarantors,] irrevocably, absolutely and unconditionally guarantee [] to [YA] the prompt and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of all principal and, interest and other amounts under the Note." As Judge Steckroth ruled, "[t]he language of the Guarantees is unconditional and unequivocal." R000652. Each of the Defendants agreed to be personally liable, without any other condition, for the payment of all amounts due to YA under the Note.

Additionally, the NPA and Guaranty Agreements each contain integration clauses expressly providing that the language of the agreements replaced and superseded any of the parties' prior negotiations or discussions regarding the terms of the agreements. Specifically, Section 8.8 of the NPA states:

> This agreement and the documents referenced herein constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and therefore, and supersede all prior understanding or agreements between the parties with respect to such subject matter.

(R0000083). Similarly, Section 12 of the Guaranty Agreements states:

> This Guaranty and the Pledge Agreement (and the documents referenced herein and therein) constitute and contain the entire agreement of the parties and supersedes any and all prior and contemporaneous agreements, negotiations, correspondence, understandings and communications between Guarantor and [YA], whether written or oral, respecting the subject matter hereof and thereof.

(R000105).

The written NPA and Guaranty Agreements, thus, contained the parties' entire agreement regarding the personal guaranty of payment to YA, and the agreements clearly provide that any and all previous negotiations would be replaced by those written terms. See Harker v.

13

McKissock, 12 N.J. 310, 321-22 (1953) (finding that the "legal consequence of such integration [clause is] that all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act" and "the contractual expression is proof against parol variation") (quotations and citation omitted). Defendants incorrectly argue that the Bankruptcy Court erred by failing to consider a June 28, 2007 email from YA Global to Anil Kothari stating that in the event of default, YA would look to the assets of the company before pursuing Kothari's personal assets. (Def. Mov. Br. 26, 27). Defendants further assert that this email induced Kothari to believe that YA would only look to his assets as a "last resort," and that Kothari reasonably believed that the email applied to all of he and his wife's personal property. (Def. Mov. Br. 27). However, neither the written NPA nor the Guaranty Agreements reference any alleged "agreement" that the Defendants' personal guaranty of payment would be only as "a last resort." Furthermore, the Defendants state that they justifiably and reasonably relied on the email, in signing the NPA and Guaranty Agreements, however, Defendants do not show any proof of this reliance. Throughout the entire negotiation of the terms of the transaction, from at least April 25, 2007 through June 28, 2007, the parties understood that the Defendants guaranty would be unconditional, as that obligation persisted through all iterations of the loan term sheets exchanged between the parties. (See, R000438, R000443, R000448, R000452, R000457) (confirming that as a condition to the transaction, the "Borrowers' principals . . . will . . . unconditionally guaranty the payment and performance of the notes").

 Lastly, the Defendants wrongly contend that Judge Steckroth's reliance on Winoka Village, Inc. v. Tate, 16 N.J. Super. 330 (App. Div. 1951), was misplaced. There, the New Jersey Appellate Division made clear that where a defendant signs a written contract containing the

14

terms of the agreement, he assumes those exact terms, which cannot "be varied or contradicted by parol" evidence. Id. at 333–34.

Thus, the Bankruptcy Court properly determined that the parol evidence rule barred the Defendants from altering, modifying, or supplementing the clear language of the NPA and the Guaranty Agreements.

### iii. The Bankruptcy Court properly entered judgment in favor of YA in excess of $81 million.

An absolute and unconditional guaranty is established by the language providing for payment by the guarantors immediately upon default. In re Kaplan, 186 B.R. 871, 875 (Bankr. D.N.J. 1995) (citing Summit Trust Co. v. Willow Business Park, L.P., 269 N.J. Super 439 (App. Div.), certif. denied, 136 N.J. 30 (1994)). A guaranty of that nature grants the lender full power, in its discretion and without notice to the debtor, to deal in any manner with the debtor's liabilities and collateral. Delaware Truck Sales, Inc. v. Wilson, 131 N.J. 20, 32 (1993) (citing Lenape State Bank v. Winslow Corp., 216 N.J. Super 115, 127–28 (App. Div. 1987)). Those rights include the right to enforce the guaranty, to forego other security interests, and to seek immediate payment in full from a guarantor without first acting against the collateral or the principal obligor. Id., see also, First Bank & Trust Co. V. Siegel, 36 N.J. Super. 207, 210 (Law Div. 1955) (holding that a bank was not "obligated to pursue any other remedies when the obligation is an absolute guaranty and a primary").

Here, the Defendants executed absolute and unconditional guarantees. The Guaranty Agreements provide that the Defendants "irrevocably, absolutely and unconditionally guarantee

15

to [YA] the prompt and complete payment and performance when due (whether at a stated maturity, by acceleration or otherwise) of all principal, interest and other amounts under the Note." R000090. Accordingly, any equity that may remain in the Property securing YA's loan is irrelevant to YA's ability to recover against the Defendants.

IV.     **CONCLUSION**

For the foregoing reasons, YA's Motions to Strike are both granted. Further, the Bankruptcy Court was correct in its application of law to the facts in this case. Therefore, the Appeal is **denied**, and the Bankruptcy Court's Order is **affirmed**. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:       March 28, 2013
Orig.:      Clerk
cc:         All Counsel of Record
            File

16